UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| JASON HUNTER,<br><br>       Plaintiff,<br><br>     v.<br><br>YOUTHSTREAM MEDIA NETWORKS, INC. and<br>NETWORK EVENT THEATER, INC.,<br><br>       Defendants. | CIVIL ACTION<br>NO.<br><br>01-cv-10659-<br>KB /mlw |

**NOTICE OF REMOVAL**

COPY

To: The Honorable Judges of the
   United States District Court for the
   District of Massachusetts

  This Notice of Youthstream Media Networks, Inc. and Network Event Theater, Inc. (the "Defendants"), respectfully shows:

  1. Youthstream Media Networks, Inc. and Network Event Theater, Inc. are the Defendants in a civil action brought in the Superior Court of Massachusetts, Middlesex County, C.A. No. 01-01606, entitled *Jason Hunter v. Youthstream Media Networks, Inc. and Network Event Theater, Inc.* The Defendants first received a copy of the Summons and Complaint in said action on or after April 17, 2001. Copies of all pleadings received by Defendants are attached hereto as Exhibits A-C.

  2. The above-described action is an action of which this Court has jurisdiction and is removable under the provisions of Title 28, United States

-2-

Code §§ 1332 and 1441(a) and (b) in that it is a civil action between citizens of different states, as more fully appears herein, and as reflected in the Civil Action Cover Sheet, the amount in controversy exceeds $75,000.

3. On information and belief, based on the allegations of the Complaint, the Plaintiff was, at the time this action was commenced, and still is as individual residing in Cambridge, Massachusetts.

4. Defendant Youthstream Media Networks, Inc. is a corporation organized under the laws of the state of Delaware with a principal place of business in New York City, New York.

5. Defendant Network Event Theater, Inc. is a corporation organized under the laws of the state of Delaware with a principal place of business in New York City, New York.

6. Pursuant to Local Rule 81.1(a), the Defendants shall request from the Clerk of the Middlesex County Superior Court certified or attested copies of all records and proceedings in the state court and certified or attested copies of all docket entries therein and shall file same within thirty days of the filing of this Notice.

WHEREFORE, the Defendants pray that the above action now pending in the Superior Court of the Commonwealth of Massachusetts, Middlesex County, be removed therefrom to this Court.

Respectfully submitted,

**YOUTHSTREAM MEDIA NETWORKS, INC. and NETWORK EVENT THEATER, INC.**

By their attorneys,

-3-

_/s/ Alicia L. Downey_
Joseph L. Kociubes, BBO #276360
Alicia L. Downey, BBO #564265
BINGHAM DANA LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

DATED: April 19, 2001

## CERTIFICATE OF SERVICE

I, Alicia L. Downey, hereby certify that the foergoing pleading was served in compliance with the Federal Rules of Civil Procedure on this 19th day of April, 2001, by serving a true and correct copy by Federal Express on all counsel of record.

_/s/ Alicia L. Downey_
Alicia L. Downey

LITDOCS:403665.1

County of Middlesex
The Superior Court

EXHIBIT A

CIVIL DOCKET# MICV2001-01806

Jason Hunter
vs.
Youthstream Media Networks, Inc. and Network Event Theater, Inc

### SUMMONS AND ORDER OF NOTICE

To the above-named Defendants:

You are hereby summoned and required to serve upon Nelson P Lovins, Esquire, plaintiff's attorney, whose address is Lovins & Metcalf, 10 Cedar Street, Woburn, MA 01801, , an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Cambridge either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WE ALSO NOTIFY YOU that application has been made in said action, as appears in the complaint, for a preliminary injunction and that a hearing upon such application will be held at the court house at said Middlesex County Superior Court, in Cambridge on 04/20/2001, at 02:00 PM in Rm 7B (Cambridge), at which time you may appear and show cause why such application should not be granted.

Witness, Suzanne V. DelVecchio, Esquire, Chief Justice of the Superior Court, at Cambridge, Massachusetts this 17th of April, 2001.

..................................................
Clerk.

**(AFFIX RETURN OF SERVICE ON BACK OF SUMMONS)**

APR 18 2001  6:30 PM FR PROSKAUER ROSE        TO 5551587161795187 P.05/18

04/18/2001 10:31  212-593-0248        YOUTHSTREAM/6DEGREES        PAGE 05
04/17/2001 04:23 FAX 781 938 4753     LOVINSAXETCALF              ☒005

EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURTS OF THE COMMONWEALTH

Middlesex, ss                                    Superior Court Department
                                                 Civil Action No.

| | |
|---|---|
| JASON HUNTER, | )<br>)<br>) |
| Plaintiff, | ) VERIFIED COMPLAINT<br>) FOR INJUNCTIVE<br>) AND DECLARATORY RELIEF<br>) AND FOR OTHER RELIEF |
| vs | ) |
| YOUTHSTREAM MEDIA NETWORKS, INC.<br>and NETWORK EVENT THEATER, INC., | )<br>)<br>) |
| Defendants. | ) |

This is a complaint to enforce the terms of a written contract under which Network Event Theater, Inc. ("NET") is required to distribute periodically to Jason Hunter ("Hunter") shares of common stock in NET in exchange for shares (already transferred by Hunter to NET), of a corporation which Hunter founded. NET, having received the benefit of its bargain and having obtained Hunter's shares in his corporation, is now in the process of dismantling the business of that corporation, and is in bad faith, by means of false and fraudulent statements, and without colorable justification, refusing to distribute the shares for which Hunter has already paid and to which he is entitled. NET's bad faith is demonstrated, *inter alia*, by its reliance upon pretextual reasons for refusing to issue the stock to Hunter. Youthstream Media Networks, Inc. ("Youthstream") is properly named as a defendant because, by virtue of mergers and acquisitions, NET has become a wholly owned subsidiary of Youthstream. Youthstream has, without thereby releasing NET from those obligations, in practice and in fact assumed the obligations NET owes to Hunter (including issuing its own stock to Hunter instead of that of

APR 18 2001  6:30 PM FR PROSKAUER ROSE                    TO 5551587,161795187 P.06/18
04/10/2001 10:31  212-593-8248        YOUTHSTREAM/6DEGREES           PAGE 05
04/17/2001 08:23 FAX 781 938 4753     LOVINS&METCALF                 ☒006

NET. Youthstream has been the party actively committing the breaches and wrongful conduct which are the subject of this suit, and, on information and belief, Youthstream has assumed the obligations and liabilities of NET towards Hunter as a matter of law. Hunter seeks declaratory relief to establish his rights to stock distributions. There is currently a live and justiciable controversy between the parties, the obligations of NET and Youthstream with respect to periodic quarterly stock distributions extend at least to December of the year 2002, and it is foreseeable that NET and Youthstream will continue to act in blatant and unexcused violation of their obligations. Injunctive relief is sought because in fact, and as a matter of law by the agreement of the parties under the written contract at issue, NET's and Youthstream's breach constitutes and causes irreparable harm to Hunter.

## I. The Parties And Jurisdiction

1. The plaintiff, Jason Hunter, ("Hunter") is a natural person residing in Cambridge, Middlesex County, Massachusetts.

2. The defendant Network Event Theater, Inc. ("NET") is a corporation organized under the law of Delaware, with a principal place of business in New York City, New York and with a usual place of business in Cambridge, Middlesex County, Massachusetts.

3. The defendant Youthstream Media Networks, Inc. ("Youthstream") is corporation organized under the laws of Delaware, with a principal place of business in New York City, New York, and with a usual place of business in Cambridge, Middlesex County, Massachusetts.

4. This Court has subject-matter jurisdiction over this suit pursuant to Mass. Gen. Laws. c. 231A, c. 214 § 1; c. 212, § 4; and c. 93A, § 11

5. This Court has personal jurisdiction over the defendants by virtue of their presence in the Commonwealth of Massachusetts and by virtue of their transacting business in this

APR 18 2001  6:31 PM FR PROSKAUER ROSE                     TO 5551587,161795187 P.07/18
04/18/2001  14:48   212-383-8248         YOUTHSTREAM/6DEGREES              PAGE 02

Commonwealth. The claims set forth in this complaint arise out of that transaction of business.

6. Venue for this action is proper in this Court pursuant to Mass. Gen. Laws, c. 223 §1 by virtue of the facts that the plaintiff works and resides in this County, and by virtue of the fact that the defendants have a place of business in this County.

## II. Facts Common To All Counts

7. On or about October 15, 1999, NET and Hunter, among others, entered into a written agreement of merger (the "Agreement") under which NET obtained all of the shares of stock in Invino Corporation ("Invino"), a corporation founded and owned in part by Hunter.

8. In exchange for his Invino stock, Hunter received a certain number of shares in NET, and the right to receive further shares of NET on a quarterly schedule as set forth in Schedule 1.7 to the Agreement. A true copy of that Schedule is attached hereto as Exhibit A.

9. Under Exhibit A, the number of shares Hunter was to receive each quarter was determined on the basis of a formula. Each quarter, the former Invino shareholders who were still owed stock by NET pursuant to the Agreement were to receive a number of shares of NET stock the value of which (determined based on an average of values during a preceding period) equaled the shareholder's proportionate share of the quarterly distribution set forth in Schedule 1.7. Thus, for instance, for quarterly distributions on and after March 31, 2000, Hunter was entitled to receive NET stock worth (as determined under the contract) 47.23332% of the total quarterly distribution.

10. The quarterly distribution for March 31, 2001 was to be $373,000 and, as a result, Hunter was entitled to receive on or about that date stock of NET worth 47.23332% of $373,000, i.e., $177,333.08.

3

APR 18 2001 6:31 PM FR PROSKAUER ROSE          TO 5551587161795187 P.08/18
04/18/2001 10:31  212-583-0248      YOUTHSTREAM/EDEGREES        PAGE 07
04/17/2001 08:23 FAX 781 935 4753   LOVINSAMETCALF              ☒007

11. On information and belief, in or around the beginning of the year 2000, NET merged with and was the surviving corporation of a merger with, a wholly-owned subsidiary of Youthstream (hereinafter, the "NET Merger"), and itself became a wholly-owned subsidiary of Youthstream.

12. As a result of the NET Merger, Hunter received Youthstream stock in a one-for-one exchange for his NET stock.

13. Following the NET Merger, on information and belief, Youthstream conducted all affairs of NET; its corporate legal department handled the legal affairs of NET, and the stock of Youthstream was and is publicly traded under the ticker name formerly used for NET stock, i.e., NETS.

14. Further, on information and belief, Youthstream as a matter of law or fact assumed the liabilities and obligations of NET.

15. Youthstream, while in fact assuming the obligations of NET towards Hunter, has refused to provide Hunter with specific information concerning the current legal and corporate structure of NET and Youthstream or the status of NET's and Youthstream's legal obligations towards Hunter. Instead, Youthstream has acted as if, and thereby led Hunter to believe that, it has stepped into the shoes of NET with respect to NET's obligations to Hunter.

16. After the NET Merger, Hunter's quarterly stock distributions in payment for his sale of his Invino stock took the form of stock in Youthstream.

17. When Hunter sold his Invino stock to NET, he entered into an employment agreement with Commonplaces, LLC, a related entity. As a part of the reorganization which included the NET Merger, Commonplaces, LLC also became wholly owned by Youthstream. After the NET Merger, Youthstream acted as if it were Hunter's employer under that agreement, and

4

APR 18 2001  6:32 PM FR PROSKAUER ROSE                              TO 5551587161795187 P.09/18
                                          YOUTHSTREAM/BDEGRFFS                  PAGE 09
04/18/2001  19:31  212-593-0248
04/17/2001  08:23 FAX 781 938 4753        LOVINS&METCALF                        ☒009

acted in all pertinent respects in the capacity of his employer under that agreement. After the NET Merger, Hunter's paychecks were issued by Youthstream.

18. Both Youthstream and NET failed and refused to make the quarterly distribution to Hunter due on or about March 31, 2001.

19. On or about April 4, 2001, Youthstream falsely alleged that Hunter had violated his employment agreement with NET and Youthstream, and withheld the stock due to Hunter as a quarterly distribution on the pretext that such withholding was an "offset."

20. Neither Youthstream nor NET have disclosed what damages they have allegedly suffered, or how these damages were calculated.

21. In fact, Hunter has not damaged Youthstream or NET in any way or, if he has (which he denies) there is no credible scenario under which those damages even approach the value of the stock to which Hunter is entitled.

22. Further, and equally dispositive, there is no provision of the Agreement or of Hunter's employment agreement which permits either NET or Youthstream to withhold the stock to which Hunter is entitled, and for which he has already paid by the transfer of his Invino stock to NET.

23. The claims which Youthstream purports to set off against Hunter's stock had not been previously disclosed by Youthstream, are presently unquantified by Youthstream, and are in fact false and fabricated. Such a set-off of rights alleged to arise under an employment contract, and amounting only to monetary damages, against rights under the Agreement is precluded as a matter of law and equity by NET's agreement, binding on Youthstream, that a breach under the Agreement is subject to equitable injunctive relief and that such breach causes or constitutes irreparable harm.

5

APR 18 2001  6:32 PM FR PROSKAUER ROSE            TO 5551587,161795187 P.10/18
                                      YOUTHSTREAM/6DEGREES    PAGE 09
04/10/2001 18:31   212-593-8248
04/17/2001 08:23 FAX 781 938 4753     LOVINS&METCALF           @009

24. The true reasons why Youthstream and NET are engaging in their blatantly unlawful conduct appear to relate to two factors, as set out in the following paragraphs.

25. NET and Youthstream are, on information and belief acquired by Hunter as a result of discussions within NET and Youthstream's Cambridge office, in the process of dismantling the business which Hunter and his fellow shareholders in Invino transferred to NET. A consequence of this dismantling would be that NET and Youthstream do not have a continuing need for Hunter's employment. Youthstream and NET therefore have a motive for forcing Hunter out of the affairs of NET and Youthstream, in violation of both the Agreement and Hunter's employment contract.

26. Furthermore, the terms and conditions of the NET Merger appear to have been designed to entrench in their positions the dominant shareholders, officers and directors of NET and Youthstream. Hunter's entitlement to quarterly distributions of Youthstream stock pose a threat to that entrenchment.

27. NET's dominant shareholders, officers and directors face an even more serious threat to their entrenched position, however, because of the manner in which NET chose to pay Hunter over time for his Invino stock. As is obvious from the formula set forth in the agreement, the lower the value of Youthstream stock falls, the greater the number of Youthstream shares Hunter is entitled to receive quarterly.

28. In fact, the value of NET and Youthstream stock has fallen dramatically. According to a proxy solicitation filed with the Securities and Exchange Commission in connection with the NET Merger, at or around the time that Hunter sold his Invino stock and took NET stock in return (i.e., in June of 1999), NET stock was trading at prices in the teens, hitting highs of up

6

APR 18 2001  6:33 PM FR PROSKAUER ROSE                TO 5551587161795187 P.11/18
                                    YOUTHSTREAM/COCOTEES              PAGE 10
04/18/2001 18:31  212-553-0248
04/17/2001 05:24 FAX 781 938 4763   LOVINS&METCALF                    @010

$13.00 and averaging around $14.00 to $15.00 per share. Currently, however, Youthstream stock is trading in the $1.00 per share range.

29. For Hunter to receive the fair consideration for which he sold his Invino stock, therefore, he must be given more than ten times as many shares in Youthstream than was anticipated at the time of the Agreement. This entitlement also threatens the entrenchment of the management of Youthstream and NET and provides a motive for the wrongful actions of Youthstream and NET because, were Hunter to receive all of the shares to which he is entitled at the current stock prices, he would become the single largest shareholder of the corporation.

30. Furthermore, on information and belief, the dominant and controlling shareholders, officers and directors of NET and Youthstream are concerned that any large-scale sell off by Hunter could threaten the value of their stock, including lowering the price below the $1.00 per share level, resulting in its being de-listed from major stock exchanges, and they are therefore improperly attempting to control the market price by depriving Hunter of shares that could be sold in the open market so as to affect stock price. In other words, they are unfairly, artificially and fraudulently manipulating the value of Youthstream stock and, on information and belief, are committing a fraud on the market.

31. Having assumed under the Agreement the risk that NET or Youthstream stock would become valueless -- a risk he still faces -- Hunter is entitled to the benefit of obtaining as many shares of NET or Youthstream stock as the contractual formula provides, along with the benefit of having the option of holding the stock in the hopes that that stock will eventually rebound in value. NET openly bargained for that result by offering a stock-for-stock swap based on a financial formula, and the refusal by Youthstream and NET to distribute stock is an act of

7

APR 18 2001  6:34 PM FR PROSKAUER ROSE                              TO 5551587161795187 P.14/18
                                              YOUTHSTREAM/BDEGREES              PAGE 13
04/18/2001  18:31   212-583-0243
04/17/2001  08:25 FAX 781 038 4753            LOVINS&METCALF                    ☒013

bad faith, fraud and unfair dealing clearly intended to deprive Hunter of the earned value of the contract between the parties.

32. Because the refusal by Youthstream and NET to make the quarterly distribution deprives Hunter of the unique opportunity to obtain shares in Youthstream or NET, to participate in its management and control, and to await the developments of the market, an award of damages will not adequately compensate Hunter for the wrongful behavior of Youthstream and NET. Furthermore, Hunter is currently being denied the benefits of participation in the corporate affairs of Youthstream and NET. He is, therefore, suffering immediate and irreparable injury for which injunctive and other equitable relief is required.

COUNT ONE: Injunctive Relief

33. Hunter incorporates herein by reference the averments of paragraphs one through thirty-two set forth above, as if set forth in full herein.

34. NET and Youthstream agreed, pursuant to paragraph 10.1 of the Agreement "that irreparable damage would occur in the event any provision of this agreement were not performed in accordance with its specific terms or were otherwise breached." Under this provision and otherwise, Hunter is entitled to equitable relief compelling Youthstream and NET to make the quarterly stock distributions described above.

WHEREFORE, Hunter demands that this honorable Court

A. Issue a preliminary injunction prohibiting Youthstream and NET from distributing to any other person the stock to which Hunter is entitled, compelling Youthstream and NET to make to Hunter the March 31, 2001 quarterly in-kind distribution of stock called for under Schedule 1.7 of the Agreement of October 15, 1999, in the form of stock in Youthstream, and compelling Youthstream and NET to make all future

APR 18 2001  6:34 PM FR PROSKAUER ROSE                                TO 5551587161795187 P.15/18
                                                    YOUTHSTREAM/6DEGREES          PAGE  14
04/18/2001  16:31   212 503 0240
04/17/2001  08:25 FAX 731 038 4753                  LOVINS&METCALF                ☒014

quarterly distributions of stock called for under Schedule 1.7 of the Agreement of October 15, 1999, in the form of stock in Youthstream until further order of the Court; and

B. Issue a permanent injunction prohibiting Youthstream and NET from distributing to any other person the stock to which Hunter is entitled, compelling Youthstream and NET to make to Hunter the March 31, 2001 quarterly in-kind distribution of stock called for under Schedule 1.7 of the Agreement of October 15, 1999, in the form of stock in Youthstream, and compelling Youthstream and NET to make all future quarterly distributions of stock called for under Schedule 1.7 of the Agreement of October 15, 1999 in the form of stock in Youthstream.

C. Award to Hunter such other and further relief which this Court deems just.

## COUNT TWO: Declaratory Relief

35. Hunter incorporates herein by reference the averments of paragraphs one through thirty-four set forth above, as if set forth in full herein.

36. There is an actual, live and justiciable controversy between Hunter on the one hand, and Youthstream and NET on the other, concerning Hunter's entitlement to his quarterly in-kind distributions under the Agreement.

WHEREFORE, Hunter demands that this honorable Court declare the respective rights and obligations of the parties under the Agreement, and award Hunter such other and further relief as this Court deems just.

## COUNT THREE: Breach of the Covenant of Good Faith and Fair Dealing

37. Hunter incorporates herein by reference the averments of paragraphs one through thirty-six set forth above, as if set forth in full herein.

38. The conduct of Youthstream and NET described above constitutes a breach of the covenant of good faith and fair dealing implied in every contract, and in this case implied in the Agreement.

39. The breach by Youthstream and NET of the covenant of good faith and fair dealing implied in the Agreement has caused damages to Hunter in an amount to be determined at trial, but not less than $177,333.03.

WHEREFORE, Hunter demands that this Honorable Court enter a judgment in his favor and against Youthstream and NET in an amount to be determined at trial, but not less than $177,333.03, plus award him such other and further relief as this Court deems just.

COUNT FOUR: Unfair and Deceptive Acts and Practices

40. Hunter incorporates herein by reference the averments of paragraphs one through thirty-nine set forth above, as if set forth in full herein.

41. Youthstream and NET at all times pertinent hereto were and are engaged in trade or commerce.

42. With respect to all transactions pertinent hereunder, Hunter was and is at all times pertinent hereto engaged in trade or commerce.

43. Hunter's claims as set forth in this complaint arise from the conduct of trade or commerce by him and by Youthstream and NET.

44. The wrongs described herein occurred and are occurring primarily and substantially in the Commonwealth of Massachusetts.

45. Youthstream and NET have employed a device, scheme or artifice to defraud, have attempted to obtain money or property by means of untrue statements or omissions of

10

Case 1:01-cv-10659-RBC   Document 1   Filed 04/19/01   Page 15 of 19

APR 18 2001  6:35 PM FR PROSKAUER ROSE         TO 5551587161795187 P.17/18
04/18/2001 18:31  212-583-8248     YOUTHSTREAM/6DEGREES      PAGE 15
04/17/2001 09:25 FAX 781 938 4753  LOVINS&METCALF            ☐ 016

material fact, and have engaged in a transaction, practice or course of business which operates ... fraud or deceit upon a purchaser of securities, i.e., Hunter.

46. The wrongs described herein were and are unfair or deceptive, constituted unfair competition, or were otherwise in violation of law and the prohibitions of Massachusetts General Laws, chapter 93A, sections 2 and 11.

47. The wrongs described herein were and are being committed knowingly and willfully.

WHEREFORE, Hunter demands that this Court award him injunctive relief in accordance with the prayer set forth following Count One, that he be awarded his damages, that any such award of damages be trebled in accordance with Massachusetts General Laws chapter 93A, section 11, that he be awarded his attorneys' fees incurred in enforcing his rights as against the unfair and deceptive acts and practices, unfair competition and/or other wrongful and prohibited conduct of Youthstream and NET, and that this Court award him such other and further relief as this Court deems just.

JASON HUNTER
By his attorneys,

_[signature]_

Nelson P. Lovins, BBO # 306020
Paul M. Rezendes, BBO # 417550
Lovins & Metcalf
Ten Cedar Street
Chestnut Green
Woburn, MA 01801
(781)938-8800
fax: (781)938-8800

Dated: April 17, 2001

13

APR 18 2001   6:35 PM FR PROSKAUER ROSE           TO 5551587161795187 P.18/18

04/18/2001  18:31   212-583 0249       YOUTHSTREAM/6DEGREES       PAGE  17
04/17/2001 08:28 FAX 781 938 4753      LOVINS&METCALF             ☒018

## VERIFICATION

I, Jason Hunter, have read the foregoing complaint. The factual statements therein are true and, as to the statements made on information and belief, they are true to the best of my knowledge and belief. The foregoing is signed under the pains and penalties of perjury.

_____
Jason Hunter

Dated: April 16, 2001

13

** TOTAL PAGE.18 **

APR 18 2001  6:33 PM FR PROSKAUER ROSE                    TO 5551587,161795187 P.12/18

04/18/2001  10:31  212-583-6243           YOUTHSTREAM/5DEGREES         PAGE 11
02/17/2001 08:21 FAX 781 033 4753         LOVINS&METCALF               @011

Schedule 1.7 (continued)

Exchange of Certificates Representing NET Common Stock

| Particulars | | Asset Thunter | M day Conder | Tyler | Hope | | Henker | | Griffin | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Stockholder | | | | | | 0.150036% | | 0.220975% | | 0.236535% | | 100.00000% |
| Total (100.1119% Distribution) | 100.000000% | 42.842826% | 42.395856% | | 1,550.31 | | 1,104.84 | $ | 1,420.96 | $ | 560,000.00 | |
| | | 42.74926% | 41.144325 | 6.243195 | 6.363156 | 0.1100030 | | 0.221635% | | 0.221035% | | 100.000000% |
| 25,708.5 | 500,660.85 | 336,441.10 | 229,171.79 | 31,540.48 | | | 1,103.22 | $ | 1,423.15 | $ | 560,991.00 | |
| 4,948.5 | 500,600.00 | 236,441.10 | 229,171.79 | 31,540.48 | | | 1,103.22 | | 1,423.15 | | 500,990.00 | |
| 5,948.5 | 500,500.03 | 236,441.10 | 222,717.79 | 33,380.42 | | | 1,103.27 | | 1,076.52 | | 100,000.00 | |
| 1,800.5 | 375,350.00 | 172,113.03 | 170,175.84 | 25,180.36 | | | 331.21 | | 1,016.32 | | 375,250.00 | |
| 1,101 $ | 375,000.00 | 172,113.03 | 170,373.81 | 25,380.36 | | | 331.21 | | 1,016.32 | | 375,000.00 | |
| 6,901 $ | 375,000.00 | 172,113.03 | 170,735.80 | 25,380.36 | | | 331.21 | | 1,016.32 | | 375,000.00 | |
| 8,801 $ | 375,000.00 | 172,113.03 | 170,373.81 | 25,380.36 | | | 331.21 | | 1,076.32 | | 375,070.00 | |
| 1,101 $ | 375,000.00 | 172,113.03 | 170,373.81 | 25,380.36 | | | 331.21 | | 1,076.32 | | 375,000.00 | |
| 6,101 $ | 375,000.00 | 172,113.03 | 170,373.81 | 25,380.36 | | | 331.21 | | 1,016.32 | | 375,000.00 | |
| 1,300 $ | 375,000.00 | 172,113.03 | 170,373.81 | 14,150.36 | | | 331.21 | | 1,076.32 | | 375,000.00 | |
| Total $ | | | | | | | | | | | | |

The Calculation formula for number of Shares of NET Common Stock to be issued to each of the shareholders listed in 1.7(b) above is as follows:

An "Shares of NET Common Stock per individual = Pro-rata Percentage of Distribution Payment times the Total Quarterly Distribution Payment for such Quarterly Closing Date divided by the NET FIS Average Price as defined in 1.4(c)(i).

Schedule 1.7

Exchange of Casflow as Representing NUT Common Stock

(i)

| Shareholder | % Ownership of Casflow Immediately prior to | # of shares of NUT Common Stock (See) |
|---|---|---|
| James Hunter | 38.8166742% | 49,370 |
| Maley Kowski | 29.2941656% | 45,416 |
| Khuzné | 3.0852045% | 19,151 |
| Bear Creek Trust | 3.0852045% | 19,151 |
| Alan Bucker | 5.8857245% | 12,151 |
| Bill Otto sath | 3.0003985% | 5,192 |
| Daniel Gronberg | 1.2339785% | 4,717 |
| Bill Tyler | 5.5555186% | 6,265 |
| Carol Rapp | 0.0214685% | 31 |
| Philip (Chaz) Hunter | 0.158 94% | 221 |
| Aaron Griffin | 0.2536.45% | 287 |
| Total | 100.0000000% | 157,152 |

NOTE: These share numbers are calculated based on the NET Average Price as defined in Section 1.6(c) of $23,961.

| CIVIL ACTION COVER SHEET | DOCKET NO(S) | EXHIBIT C | Trial Court of Massachusetts Superior Court Department County: _____ |

**PLAINTIFF(S)**
JASON HUNTER

**DEFENDANT(S)**
YOUTHSTREAM MEDIA NETWORKS, INC.
NETWORK EVENT THEATER, INC.

ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE (781)938-8800
Nelson P. Lovins 306020
Paul M. Retendes 417850
Ten Cedar Street, Woburn, MA 01801

ATTORNEY (if known)

BOARD OF BAR OVERSEERS number

**Origin code and track designation**

Place an x in one box only:
☒ 1. F01 Original Complaint
☐ 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (T)
☐ 3. F03 Retransfer to Sup.Ct. C.231,c.102C (X)
☐ 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
☐ 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
☐ 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| D01 | Specific Performance | F | ( ) Yes  (X) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ............................................ $..............
2. Total Doctor expenses ............................................. $..............
3. Total chiropractic expenses ....................................... $..............
4. Total physical therapy expenses .................................. $..............
5. Total other expenses (describe) ................................... Subtotal $..............
$..............
B. Documented lost wages and compensation to date ................... $..............
C. Documented property damages to date .............................. $..............
D. Reasonably anticipated future medical and hospital expenses ....... $..............
E. Reasonably anticipated lost wages ................................
F. Other documented items of damages (describe) $..............

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

$..............
TOTAL $..............

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):
Defendants failed to make contractually required distribution of stock worth more than $177,333

TOTAL $ 177,333

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT    NONE

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____  DATE Apr. 17