UNITED STATES DISTRICT COURT
For the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASON HUNTER, <br><br> Plaintiff, <br><br> vs. <br><br> YOUTHSTREAM MEDIA NETWORKS, INC. NETWORK EVENT THEATER, INC., and COMMON PLACES, LLC, <br><br> Defendants. | Civil Action No. <br> ~~01-CV-1606 MLW~~ <br> 01-CV-10659 MLW |

### REPLY OF THE PLAINTIFF JASON HUNTER TO COUNTERCLAIM OF DEFENDANT NETWORK EVENT THEATER, INC.

As and for his reply to the counterclaim of Network Event Theater, Inc. ("NET"), the plaintiff, Jason Hunter ("Hunter") states as follows:

#### First Defense

In response to the numbered paragraphs of the counterclaim, Hunter:

1. Denies that NET has legitimate claims of the type identified in paragraph 1 of the counterclaim, and states that the counterclaim speaks for itself and this paragraph states opinions and conclusions of law and, therefore, no response to this paragraph is required. If and to the extent a response is deemed to be required, Hunter denies that the counterclaim adequately sets forth the claims described in paragraph 1 of the counterclaim.

2. Admits that NET is a Delaware corporation with a place of business in New York at the same address as Youthstream Media Networks, Inc. ("Youthstream").

3. Admits that he is a resident of the Commonwealth of Massachusetts and denies the remaining allegations of paragraph 3 of the counterclaim. And further answering, Hunter has already advised Youthstream and NET of his new address to which he moved in reliance on the termination letter from Youthstream, NET and Commonplaces, LLC ("CPLLC") dated April 4, 2001, and, therefore, the allegations of this paragraph are made without requisite due diligence.

4. States that the allegations of paragraph 4 of the counterclaim assert conclusions and opinions of law to which no response is required.

3. [sic] Denies the allegations of that paragraph of the counterclaim numbered 3, following the first paragraph numbered 4 of the counterclaim. And further answering, Hunter states that the transaction on or about October 15, 1999 was a stock Acquisition and Merger Agreement, not an asset purchase, as is clear from the face of the operative document and as is well known to NET and Youthstream.

4. [sic] Admits that one of a number of the preconditions to NET's obligations under the October 1999 Acquisition and Merger Agreement was the execution of employment agreements by a number of then-employees of Invino, including but not limited to Hunter, and otherwise denies the allegations of the paragraph numbered 4 of the counterclaim following the first paragraph so numbered. And further answering, Hunter states that CPLLC's employing him was likewise a precondition to the obligations of Invino and the shareholders of Invino under the Acquisition and Merger Agreement.

5. States that the employment agreement speaks for itself and that no response to paragraph 5 is required. If and to the extent that a response to paragraph 5 is required, Hunter denies that the employment agreement creates any obligations owed by Hunter to NET.

6. Denies the allegations of paragraph 6 of the counterclaim and states further that he is not the "holder" of intellectual property or other information relating to the Instant Messaging Service, and that any such information he had was made fully available to CPLLC during Hunter's employment and until his termination without cause by CPLLC and Youthstream. And further answering, Hunter states that the Acquisition and Merger Agreement specifically provides in section 10.10 thereof as follows: "This agreement and the schedule and exhibits to this agreement constitute the entire agreement among the parties with respect to their subject matter and supersede all prior agreements and understandings, both written and oral, among the parties with respect to that subject matter." The effect of this section, entered into by a NET as a sophisticated party represented by able counsel, is to preclude precisely the type of claims which NET now asserts, and NET is fully aware that its counterclaim is improper and barred by its execution of the Acquisition and Merger Agreement.

7. Denies the allegations of paragraph 7 of the counterclaim, and states further that (i) the allegations of breach of the Employment Agreement are false, without basis, and a pretext for denying Hunter the benefits of his Employment Contract upon termination by CPLLC and Youthstream and the benefits of the Merger and Acquisition Agreement, and (ii) even were there a breach of the Employment Agreement, which Hunter denies, that would not constitute a breach of the Acquisition and Merger Agreement, under which the only obligation imposed on Hunter was to enter into the Employment Agreement.

8. Denies the allegations of paragraph 8 of the counterclaim

9. Admits that on or about April 4, 2001, Youthstream, NET and CPLLC, by and through an officer of Youthstream, wrongfully notified Hunter that he was terminated as of April 24, 2001, and that he was being denied the quarterly stock distribution to which he is entitled

under the Acquisition and Merger Agreement. Otherwise, he denies the allegations of the paragraph numbered 9. Further answering, Hunter states that Youthstream, NET and CPLLC purported to take that action without providing Hunter the hearing before the directors required by the Employment Agreement, instead purporting (without right) to require Hunter to demand same and, further, that Youthstream, CPLLC and NET declared that the purported breaches of which they accused Hunter were not subject to cure. And further answering, Hunter states that at the time of the April 4, 2001 termination letter, which constituted an anticipatory repudiation of Hunter's Employment Contract, CPLLC and Youthstream were in actual breach of the employment contract by virtue of their having failed to pay Hunter a quarterly bonus to which Hunter's employment contract entitled him, and by virtue of their having materially changed the circumstances and conditions of Hunter's employment. As a result of the Youthstream's and CPLLC's actual breach and anticipatory repudiation, as well as Youthstream's and CPLLC's denial to Hunter of the automatic right to a hearing, and their declaration that the purported breaches by Hunter were not subject to cure, Youthstream's and CPLLC's termination letter became and was an irrevocable breach of the Employment Contract, entitling Hunter to his contractual remedies, accelerated to permit present and full recovery of all amounts due or to become due under the Employment Contract.

10. Admits that he was required to commence suit to obtain distribution of the stock to which he was entitled under the Acquisition and Merger Agreement, but denies that his work performance changed in any material respect. And further answering, Hunter states that the allegation that his work performance improved and that "he seemed to be addressing the deficiencies raised in the April 4, 2001 notification" are knowingly and willfully false, made solely in an effort to retract the irrevocable breach and termination of April 4, 2001, and

wholly inconsistent and irreconcilable with the positions taken by Youthstream, NET and CPLLC in the April 4, 2001 termination letter.

11. Admits that after Hunter commenced suit to obtain the stock to which he was entitled, Youthstream, CPLLC and NET caused the distribution to him of that stock. Hunter denies the remaining allegations of paragraph numbered 11 of the counterclaim and further states, on information and belief, that Youthstream, CPLLC and NET reversed their position solely because they recognized that they were in an untenable legal position, were faced with an upcoming hearing on a preliminary injunction in which Hunter had excellent chances of success, and therefore needed to change their posture, tactics and theory in the face of meritorious claims by Hunter.

12. Admits that, in a continued effort to re-write history, Youthstream, CPLLC and NET caused a letter to be written to Hunter by Mark Palmer "Chief Technology Officer" of an undisclosed principal, asserting in substance that if Hunter did not report to the offices of Youthstream, CPLLC and NET in Cambridge, it would be deemed that he had resigned. Hunter denies the remaining allegations of paragraph 12 of the counterclaim and states further that by April 24, 2001, he had in fact already been terminated by CPLLC and Youthstream, without cause, and he was entitled to recover for the breaches of the Employment Contract by Youthstream and CPLLC. Hunter further denies any implication that he had resigned.

13. Admits that by May 5, 2001, Hunter's employment had been terminated by Youthstream, CPLLC and NET, and denies the remaining allegations of paragraph 13 of the counterclaim. Hunter further denies any implication that he had resigned.

14. Responds to the allegations of paragraph 14 of the counterclaim by incorporating herein by reference his responses to paragraphs 1 through 13 set forth above.

15. Denies the allegations of paragraph 15 of the counterclaim.

16. Denies the allegations of paragraph 16 of the counterclaim.

17. Responds to the allegations of paragraph 17 of the counterclaim by incorporating herein by reference his responses to paragraphs 1 through 16 set forth above.

18. Denies the allegations of paragraph 18 of the counterclaim.

19. Denies the allegations of paragraph 19 of the counterclaim.

20. Responds to the allegations of paragraph 20 of the counterclaim by incorporating herein by reference his responses to paragraphs 1 through 19 set forth above.

21. Denies the allegations of paragraph 21 of the counterclaim.

## Second Defense

NET has failed to state a claim upon which relief may be granted in that the plain terms of the contract on which NET brings its counterclaim, and which are therefore properly before the Court on a motion to dismiss, preclude the claims now presented.

## Third Defense

If NET were otherwise permitted to bring the claims asserted in its counterclaim, which Hunter denies, NET is in material breach of the express or implied terms of its own contract and may not recover in contract.

## Fourth Defense

If NET were otherwise permitted to bring the claims asserted in its counterclaim, which Hunter denies, breach of the employment contract by Youthstream and CPLLC precludes any recovery by NET.

### Fifth Defense

If NET were otherwise permitted to bring the claims asserted in its counterclaim, which Hunter denies, NET's claim would nevertheless be barred by failure of conditions precedent, i.e., the maintenance of the conditions and terms of Hunter's employment in accordance with the Employment Agreement.

### Sixth Defense

By virtue of the fact that Hunter's employment contract with Youthstream and CPLLC makes specific provision for termination by Hunter with or without Good Reason, NET may not bring forth the claims of its counterclaim even if Hunter, and not Youthstream and CPLLC, terminated the employment relationship.

### Seventh Defense

NET's counterclaim constitutes an attempt to enforce a penalty and a forfeiture, and is contrary to public policy and governing law.

### Eighth Defense

NET's counterclaim constitutes an unreasonable effort to restrain Hunter's freedom of contract and employability and is contrary to public policy and law.

### Ninth Defense

NET's counterclaim is wholly insubstantial and without merit, has been brought in bad faith and solely for its *in terroram* effect, and needlessly and vexatiously multiplies and complicates this litigation.

### Tenth Defense

NET may not sue Hunter for the entirety of the purchase price because it has neither attempted to rescind the Acquisition and Merger Agreement, nor lost the benefit of what it

received from the other stockholders of Invino under and as a result of the Acquisition and Merger Agreement.

### Eleventh Defense

If Hunter caused any damages to NET, which Hunter denies, NET nevertheless is subject to damage recovery limitations under the Acquisition and Merger Agreement.

WHEREFORE Hunter demands that judgment be entered in his favor under the counterclaims of NET, that he be awarded his costs and attorneys' fees incurred in defending against same, and that he be granted such other and further relief as this Court deems just.

JASON HUNTER
By his attorneys,

Nelson P. Lovins, BBO # 306020
Paul M. Rezendes, BBO # 417850
Lovins & Metcalf
Ten Cedar Street
Chestnut Green
Woburn, MA 01801
(781)938-8800
fax: (781)938-8800

Dated: May 21, 2001

I certify that on 5-22-01
I served this document on the
following persons, by mail, ~~by hand,~~
pursuant to Rule 5 of the
Federal Rules of Civil Procedure

To: Joseph L. Kociubes, Esq
Alicia Downey, Esq